WOODCREEK ASSOCIATION, INC., Appellant,

v.

BINGLE et al., Appellees.

[Cite as *Woodcreek Assn., Inc. v. Bingle* (1991), 73 Ohio App.3d 506.]

Court of Appeals of Ohio,
Clermont County.

No. CA90–10–095.

Decided Aug. 5, 1991.

Matre, Cuni & Orner Co., L.P.A., and James A. Matre, for appellant.

Benesch, Friedlander, Coplan & Aronoff, Donald J. Mooney, Jr. and Jeffrey T. Lehman, for appellees.

WALSH, Judge.

This is an appeal of a partial summary judgment and a bench trial verdict against appellant, Woodcreek Association, Inc., and in favor of appellees, William and Sonja Bingle, in the Clermont County Court of Common Pleas. The issue before the trial court was whether the Bingles' satellite dish antenna violated the Woodcreek development's restrictive covenants.

Woodcreek Subdivision is a planned unit development that consists of one hundred forty-seven home sites on public streets, as well as many amenities such as bikeways, boulevard areas, and a swimming pool. The development plan emphasizes aesthetic qualities and uniformity among the home sites through a complex set of land use controls. Woodcreek's charter is the Declaration of Covenants, Conditions and Restrictions and Reservation of Easements for Woodcreek Association, Inc. ("Declaration"). The Declaration is recorded in Volume 610, page 22 of the Deed Records of Clermont County. The portions of the Declaration here at issue are as follows:

"10.2(r) *Exterior Antennae.* All radio transmitting or receiving antennae and television antennae shall be attached only to the Dwelling Unit located upon each Parcel. No freestanding antennae or receivers are permitted, and the maximum allowable height for any antenna or receiver is ten (10) feet above the roof line of the Dwelling Unit. No transmitting or receiving antennae shall be permitted upon any parcel which causes interference with the reception of electronic signals by other residents."

"10.2(e) *Exterior Surfaces of Buildings.* Owners shall not cause or permit anything to be hung or displayed on the outside of windows or placed on the outside walls of a Dwelling Unit and no sign shall be affixed to or placed upon the exterior walls or roof or any part thereof, without the prior consent of the

Board with the exception of signs advertising a Parcel for sale or rent or signs used by a Subdeveloper to advertise the property during the construction and sales period."

Appellant, Woodcreek Association, Inc. ("Association"), is an association organized for the supervision of the development. The Declaration vests the authority to maintain the development's amenities in the Association, and all property owners, including the Bingles, are members of the Association.

In August 1986, the Bingles purchased the property located at 5963 Cook Road, within the Woodcreek Subdivision. Soon after moving on the property and without notifying the Association, they caused a receiver-only satellite dish to be affixed to their residence. The satellite dish was attached to a pole that was set in the ground. The pole was then anchored to the side of the house with braces. The satellite dish extends between three and four feet above the roof line of the house. It is not claimed that the dish interferes with the reception of electronic signals by other residents.

After the Bingles installed the satellite dish, the Association informed them that it deemed the dish to be in violation of the restrictive covenants. In May 1989, the Association filed a complaint with the Clermont County Court of Common Pleas, alleging a violation of Sections 10.2(r) and 10.2(e) of the Declaration. The trial court granted the Bingles' motion for summary judgment on the issue of the Section 10.2(r) violation, reserved for trial the issue of Section 10.2(e) violation and denied the Association's motion for summary judgment. After a bench trial on August 28, 1990, the trial court also found in favor of the Bingles on the issue of the Section 10.2(e) violation.

The Association brings the instant appeal, citing two assignments of error. The first assignment of error is as follows:

"The trial court erred to the prejudice of plaintiff-appellant in denying summary judgment in favor of plaintiff-appellant and in granting summary judgment in favor of defendant-appellees."

The second assignment of error, while not explicitly set forth in the Association's brief, appears to be that the trial court erred in finding for the Bingles on the Section 10.2(e) issue.

We begin with the first assignment of error. The trial court found that the satellite dish was an antenna within the meaning of Section 10.2(r) and, further, that the dish was in compliance with the requirements of that section.

In construing the provisions of a restrictive covenant, it is necessary to first look at the language used to determine the drafters' intent. *Hitz v. Flower* (1922), 104 Ohio St. 47, 57, 135 N.E. 450, 453. While a court has the

authority to interpret the language of a restrictive covenant to determine the intent of the drafters, it cannot rewrite a covenant to create new restrictions. *Driscoll v. Austintown Assoc.* (1975), 42 Ohio St.2d 263, 277, 71 O.O.2d 247, 254–255, 328 N.E.2d 395, 404.

Section 10.2(r) seemingly regulates all antennas. The language of Section 10.2(r) makes no distinction between satellite dishes and ordinary antennas. The drafters of the section used language such as "television antennae," "freestanding antennae," and "any antennae." Neither party claims that the Bingles' satellite dish is not an antenna. It is also undisputed that the satellite dish complied with the express requirements of Section 10.2(r) in that it was not freestanding, did not extend beyond ten feet above the roof line, and did not interfere with other residents' reception.

The Association claims, however, that it reasonably interpreted the language of Section 10.2(r) to require a distinction between ordinary antennas and satellite dishes, based upon the need to preserve the aesthetics of the community. It argues that the drafters of the Declaration intended the Association to possess flexibility in applying the restrictions so that it could preserve the "look" of the community. That "look," the Association maintains, would be affected to a greater extent by a satellite dish than by an ordinary television antenna. The Declaration prohibits satellite dishes, it is urged, even though satellite dishes are not expressly mentioned and even though Section 10.2(r) does not purport to flatly prohibit any kind of antenna.

The Association's argument is not persuasive. Such wide discretion on the part of the Association in construing Section 10.2(r) is simply not warranted by the language of the section. The section sets forth specific guidelines and limitations applicable to television antennas, and does not grant the Association the latitude to ban certain types of antennas based upon their general effect on the "look" of the subdivision.

The Association cannot, therefore, be accorded the authority to interpret Section 10.2(r) so as to create a ban on satellite dishes where the language does not support such a ban. Even if the Association could properly argue that it has discretion in enforcing a clearly applicable restriction, it does not have the discretion to unilaterally create restrictions where none exist. The trial court correctly refused to rewrite the covenant to include a new restriction. The first assignment of error is therefore overruled.

The second assignment of error involves the construction of Section 10.2(e) of the Declaration. The trial court found the terms ambiguous and construed the section in favor of the Bingles.

A fundamental rule of construction is that ambiguities are to be strictly construed against the drafting party. *Ottery v. Bland* (1989), 42 Ohio App.3d 85, 87, 536 N.E.2d 651, 654. Further, the general rule in construing agreements restricting the use of real estate is that such agreements are strictly construed against limitations on use and that all doubts should be resolved against a construction that would increase the restriction upon the use of real estate. *Aurora Shores Homeowners Assn. v. Hardy* (1987), 37 Ohio App.3d 169, 170, 525 N.E.2d 26, 27; *Loblaw, Inc. v. Warren Plaza, Inc.* (1955), 163 Ohio St. 581, 57 O.O. 10, 127 N.E.2d 754, paragraph two of the syllabus.

The main point of contention in construing Section 10.2(e) is the meaning to be given the word "anything" in the first clause. While "anything" as it is used in the first clause appears to limit or require the Association's consent for all objects affixed to the outside of the residence, the remainder of the section concerns the specific question of signs or advertisements. The argument is asserted that the term "anything" is limited by the subsequent language referring to signs. There is no indication from the language of Section 10.2(e) that the specific mention of signs or advertising in any way limits the scope of the word "anything" used in the first clause. Rather, the section embodies two separate restrictions, one prohibiting anything from being affixed to the exteriors of dwelling units and another stating specific restrictions applicable to signs.

Nevertheless, an indication that the term "anything" is not to be read expansively is that other sections of the Declaration address specific limitations on objects placed on or attached to the residence. A case in point is the section on exterior antennas. Section 10.2(r) permits exterior antennas which, presumably, must be attached to the exterior of the building. Implicit, then, in the language of Section 10.2(e) is the exception permitting antennas to be attached to the exterior. While such specific provisions do not conclusively foreclose the application of the general provision of Section 10.2(e), they do render the meaning of the term "anything" questionable. As the trial court properly found, Section 10.2(e) is ambiguous.

At trial, the Association was given the opportunity to clarify the ambiguity. Specifically, it was given the opportunity to demonstrate that Section 10.2(e) had been applied to require consent for anything to be affixed to the exterior of the development's residences. The Association did not come forward with evidence tending to prove such an application. On the contrary, the evidence presented indicated that many of the residences in the subdivision had external fixtures, including television antennas, that had not been subject to the consent of the Association. The case at bar, then, is distinguishable from

those in which clearly worded restrictions were upheld as reasonable because they were strictly and uniformly enforced. See *Beckett Ridge Assn.–I v. Agne* (1985), 26 Ohio App.3d 74, 26 OBR 248, 498 N.E.2d 223. The Association has demonstrated neither clarity of language nor uniformity of enforcement.

The case at bar is also distinguishable from *Sprunk v. Creekwood Condominium Unit Owners' Assn.* (1989), 60 Ohio App.3d 52, 573 N.E.2d 197. In *Sprunk,* the court held that a covenant prohibiting "anything placed on the outside walls of a building" could be construed to prohibit a screen door from being installed on the unit. In *Sprunk,* however, there was no mention that a separate, specific covenant governed screen doors, as is the case with television antennas in the case at bar. Also, there was evidence in *Sprunk* that the restriction had been enforced in a uniform manner, unlike the restriction in the Woodcreek Subdivision. *Id.* at 54, 573 N.E.2d at 199. The court in *Sprunk* further cited the special need for restrictions with respect to condominiums organized under R.C. Chapter 5311. Of course, that consideration is not wholly applicable here. Finally, the court in *Sprunk* decided merely that the trial court had not abused its discretion in construing the restriction to prohibit screen doors; it did not hold that such was the only reasonable construction, or even the most reasonable.

As the Association failed to clarify the ambiguity of Section 10.2(e), the trial court properly construed the covenant in favor of the free use of the property and against the Association, which drafted the language of the covenant. The second assignment of error is therefore overruled.

*Judgment affirmed.*

JONES, P.J., and WILLIAM W. YOUNG, J., concur.